# United States Court of Appeals
## For the First Circuit

No. 06-1369

MAHMED MAHMOUD,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>

Lynch and Lipez, <u>Circuit Judges</u>.

<u>Carlos E. Estrada</u> on brief for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, Department of Justice, <u>Greg D. Mack</u>, Senior Litigation Counsel, and <u>Mary Jane Candaux</u>, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Department of Justice, on brief for respondent.

May 4, 2007

**BOUDIN**, **Chief Judge**. Mahmed Mahmoud, a native and citizen of Egypt, entered the United States on June 12, 2001, as a non-immigrant visitor authorized to remain until December 11, 2001. He failed to leave by that date. In October 2003, Mahmoud conceded in removal proceedings that he was subject to removal, but he requested voluntary departure. The immigration judge ("IJ") granted Mahmoud's request, so long as he departed on or before February 11, 2004, or within any extension granted to him.

In late December 2003, after consulting an immigration attorney, Mahmoud married Gloria Maldonado. Within a few days, Maldonado submitted a request for an immigrant visa for Mahmoud and in January 2004, Mahmoud moved to reopen his removal proceedings and adjust his status. The IJ promptly denied relief with a brief explanation; Mahmoud sought review; and the Board of Immigration Appeals remanded, asking the IJ to explain further the reasons for her denial.

On December 2, 2004, the IJ ruled that, given the sequence of events described above, it was "unlikely" that Mahmoud's marriage was bona fide--a condition for adjustment of status in this case, 8 U.S.C. § 1255(e) (2000)--and in any event adjustment remained a discretionary decision and the circumstances did not warrant relief. The IJ noted that Mahmoud had presented little evidence of favorable equities, and suggested that Mahmoud's

actions "constitute[d] a delay tactic and a disregard for the final order that [Mahmoud] requested."

Mahmoud appealed this decision to the Board in January 2005. While that motion was pending, United States Citizenship and Immigration Services, an agency within the Department of Homeland Security,[1] approved Maldonado's visa petition on behalf of Mahmoud, who then filed with the Board a motion to remand, arguing that the approval of his petition supported his claim that his marriage was bona fide and that he was eligible for adjustment of status.

Acting by a single member, the Board affirmed the IJ's denial of Mahmoud's motion to reopen and denied his motion to remand. As to reopening, the Board agreed with the IJ that Mahmoud was not entitled to favorable discretionary action on his application to adjust status. The motion to remand, it found, was in effect a motion to reopen and was accordingly numerically and time-barred. 8 U.S.C. §§ 1229a(c)(7)(A), 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). The Board added that, if not thus barred, Mahmoud's failure to voluntarily depart as earlier ordered precluded adjustment of status. 8 U.S.C. § 1229c(d).

---

[1]In 2003, functions of the former INS were transferred to the newly formed Department of Homeland Security and divided into three separate agencies, including United States Citizenship and Immigration Services; the Attorney General retained the adjudicative and discretionary functions exercised through the IJs and the Board. See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

Mahmoud now seeks review in this court, arguing that the IJ and Board erred both in substance and procedurally, denying him due process. The government responds that to the extent Mahmoud preserved claims, they relate to factual or discretionary determinations by the IJ and the Board as to which judicial review is precluded by statute, see 8 U.S.C. § 1252(a)(2)(B), namely, whether Mahmoud entered into a bona fide marriage and whether a discretionary adjustment of status should be allowed.

Because of rapid successive amendments, the immigration statutes are now an archeological dig in which layer upon layer of provisions, often with different effective dates, must be excavated to determine what is or is not reviewable.[2] Ever changing substantive law, including new regulations and court glosses, adds further complications. The result, although partly due to real world conditions and inherent complexities of the subject, is a maze of confusion.

In this case, we can bypass the arguments as to just what is or is not reviewable and whether special restrictive standards apply to review, because the IJ and the Board would be upheld even if everything was reviewable under ordinary administrative law standards and none of the special restrictions applied. A vast

---

[2]E.g., REAL ID Act of 2005, Pub. L. No. 109-13, div. B, 119 Stat. 231 (2005); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C, 110 Stat. 3009 (1996); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. IV, 110 Stat. 1214 (1996).

number of cases turn on whether someone is <u>entitled</u> to be considered for discretionary relief; here, discretionary relief <u>was</u> considered and was denied.

Because of perceived abuses, Congress by statute and the Attorney General by regulation have sought to prevent applicants from using marriages to U.S. citizens as a means of avoiding normal visa requirements or of frustrating removal proceedings against one who has overstayed his visa. Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537 (1986); <u>see also</u> 8 C.F.R. § 216.3(b). Pertinently, if it were found that Mahmoud had in fact entered into this marriage simply to defeat removal, he would be ineligible for an adjustment of status from removable alien to permanent resident. 8 U.S.C. § 1255(e).

However, even if the marriage did not disqualify Mahmoud, the decision whether to grant an adjustment of status is still a discretionary decision, 8 U.S.C. § 1255(a); where the request for adjustment of status is made by one like Mahmoud already in removal proceedings, the IJ presiding over the removal proceeding exercises that discretion. 8 C.F.R. § 1245.2(a)(1). In this instance, the IJ expressed doubt whether this was a bona fide marriage but <u>also</u> denied relief as a matter of discretion.

Here, the IJ made clear that the outcome would be the same even if she ignored her doubts as to whether the marriage was more than a device to frustrate the order of removal. The IJ noted

Mahmoud's unconditional agreement to voluntarily depart (which he failed to do without securing an extension), the eve-of-departure marriage, and the lack of any evidence from Mahmoud "to show hardship or humanitarian concerns beyond the mere act of marriage itself" such as "a U.S. citizen child."

Even if Congress had not limited review of factual and discretionary determinations, this is a perfectly rational explanation rooted in the record. Judgments about equities and last minute requests for relief and about the importance of voluntary departure agreements are exactly the kind of factors that one would expect a decision-maker to consider. See generally In re Velarde, 23 I. & N. Dec. 253, 256 (BIA 2002). Nothing in the outcome is surprising--let alone irrational or arbitrary.

Mahmoud was, of course, provided an opportunity to point to discretionary factors in his favor, but he says that he was entitled as a matter of due process to an evidentiary hearing on his motion to reopen to adjust status. No such constitutional claim was presented to the Board; in his second appeal, Mahmoud simply argued that the failure to provide such a hearing was an abuse of discretion. This likely ends the matter because an unexhausted claim is ordinarily not preserved for review. 8 U.S.C. § 1252(d)(1).

In all events, Mahmoud apparently made no proffer to the IJ--and certainly has not pointed us to such a proffer--as to

-6-

specific evidence that he would have offered as to discretionary factors or equities in support of an adjustment of status. Absent such a showing, there is no plausible due process or abuse of discretion claim. See Morales-Izquierdo v. Gonzales, 477 F.3d 691, 701 (9th Cir. 2007); cf. Luna v. INS, 709 F.2d 126 (1st Cir. 1983).

As for Mahmoud's request for a second remand, this request (whether or not procedurally barred) was effectively mooted by the Board's decision to sustain the discretionary denial of adjustment of status. Mahmoud sought remand for the IJ to reconsider whether the grant of the visa application by a different agency supported the claim that the marriage was bona fide. But in denying discretionary relief, the IJ ruled that the denial did not depend on whether the marriage was bona fide.

Finally, Mahmoud argues that "systemic malaise" has infected the review process for immigration cases, and that this malaise resulted in a predisposition to deny his claim and a violation of his due process rights. Again, Mahmoud did not present this claim to the Board; but there is no evidence that the IJ or the Board was biased or unserious about review. Mahmoud himself got fair consideration of his claim, including one remand for further proceedings and an explicit explanation for the denial of discretionary relief.

The petition for review is denied.